UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

MIG East, LLC,

    Debtor.
_____/

Case No.: 23-51096
Chapter 11
Hon. Mark A. Randon

MIG East, LLC,

    Plaintiff,

v.

Adversary Proceeding
Case No.: 23-04492

Selective Insurance Company of America,

    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

**I.    INTRODUCTION**

MIG East, LLC ("MIG") is a Detroit-based construction services company, in business since 2000. MIG historically performed general contracting services on private projects that did not require construction bonds. However, in 2020, its former president undertook a project as construction manager that required a multi-million dollar bond to ensure timely project completion and payment of subcontractors. As the project progressed, MIG failed to pay its subcontractors, and several bond claims and related litigation ensued; MIG filed bankruptcy under Subchapter V of Chapter 11 on December 19, 2023. In the pending motion, filed in its adversary proceeding against the surety (bond company), MIG asks the Court for a temporary

1

restraining order and preliminary injunction that:

1. Stays the surety's federal district court litigation seeking reimbursement of bond claim payments from MIG's individual guarantors;

2. Finds any claims against the surety are best handled in the bankruptcy case; and

3. Prohibits the surety from paying any bond claim during the pendency of the bankruptcy.

The Court heard argument on January 22, 2024, and took the matter under advisement. The surety has prudently agreed to a 90-day stay of its litigation against the individual guarantors, which the Court adopts and, for now, resolves MIG's first request.[1] After balancing the four traditional preliminary injunction factors, the Court otherwise **DENIES** MIG's motion: the surety may continue to pay bond claims during MIG's bankruptcy.

The hearing scheduled for January 29, 2024, at 2:00 p.m. is **CANCELED**.

## II. BACKGROUND

This opinion sets forth the Court's factual findings and legal conclusions. The material facts are not in dispute, so an evidentiary hearing is not necessary to decide the pending motion.

Life is a Dreamtroit ("Dreamtroit") is the owner of an adaptive re-use and renovation project located at 1331 Holden Street in Detroit, Michigan. Under a standard American Institute of Architects (AIA) document, signed on September 24, 2020, Dreamtroit retained MIG as its construction manager. The agreement was signed by MIG's then president, Brian Deming, and required Labor & Material and Payment & Performance Bonds in the amount of $11,295,755.

Construction bond claims are requests project owners or subcontractors make to sureties

---

[1] The Court will make a determination as to any extension of the voluntary stay against the individual guarantors, if requested, before its expiration.

when contractors (or construction managers) fail to fulfill their contractual obligations. A performance bond requires contractors to meet all the performance standards specified in a contract; a payment bond requires contractors to pay their suppliers and subcontractors on time and in full. Both authorize claims against the surety when performance doesn't occur or the contractor fails promptly to pay its subcontractors.

After vetting MIG and collecting a premium payment, Selective Insurance Company of America ("Selective") agreed to serve as the surety. Sureties generally make money from premiums and risk losing money if—over a given period—claims paid out exceed policy premiums. Selective, therefore, requires indemnification for any paid bond claims: in this case from MIG and two individuals, Paul Jenkins, Sr. and Anita D. Washington-Jenkins. To further reduce its potential exposure, Selective thoroughly investigates subcontractor claims, including consultation with its insured (MIG), before any payments are made.

The Dreamtroit project began on January 13, 2021. MIG acknowledges that the project was significantly underbid, and it later ran into difficulties paying subcontractors. These difficulties initially resulted in an approximately $337,000 claim against the surety, and more recently into over a million of dollars of additional claims. Making matters worse, during this troubled period, Mr. Deming resigned, and Paul Jenkins, Sr. had to assume operational responsibility.

Currently, MIG is operating solely through a joint venture with Roncelli Construction ("MIG-CELLI"); Paul Jenkins, Jr. is running MIG. With the infusion of money from MIG-CELLI and the individual guarantors, MIG intends to file a plan of reorganization that proposes to repay one hundred percent of the subcontractors' claims over three to five years.

3

In support of its motion for a temporary restraining order and preliminary injunction against Selective, MIG argues:[2]

1. Claims should be set as of the petition date, and allowing pre-petition claims to be continually adjusted post-petition creates a "moving target"; inhibits MIG's ability to reorganize as it will need to constantly amend its schedules and extend the deadline to file a plan, if permissible; and creates needless litigation.

2. If Selective obtains a judgment against the individual guarantors, it is akin to obtaining indemnification from MIG because funding in the case will come, in part, from the guarantors.

3. Selective is attempting to profit from payment of claims and has a competitive advantage over the other unsecured creditors.

4. The number of suits arising from bond claims are potentially unwieldy and best handled by the bankruptcy court.

5. There is a potential for inconsistent decisions from different courts; all claims should be filed in the bankruptcy court.

6. MIG is short-staffed because of four resignations, which hinders its ability to assist the surety in evaluating any defenses to the bond claims.

7. The bankruptcy will proceed expeditiously, and all claims will be paid within three years.

As discussed below, the Court finds these arguments unpersuasive.

### III. APPLICABLE LAW AND ANALYSIS

Under 11 U.S.C. § 105, "The court *may* issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." (Emphasis added). This may include extending the automatic stay under 11 U.S.C. § 362 to non-parties. "When issuing a preliminary injunction pursuant to its powers set forth in section 105(a), a bankruptcy court must consider the traditional factors governing preliminary injunctions pursuant to Federal Rule of

---

[2]MIG's complaint, like its motion, appears to seek *preliminary* injunctive relief only.

Civil Procedure 65." *Am. Imaging Services, Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 963 F.2d 855, 858 (6th Cir. 1992). These factors include: (1) the likelihood of plaintiff's success on the merits; (2) whether plaintiff will suffer irreparable injury without the injunction; (3) the harm to others which will occur if the injunction is granted; and (4) whether the injunction will serve the public interest. *Id.* The Court balances these factors; they are not prerequisites that must be met. *Unsecured Creditors' Comm. v. DeLorean (In re DeLorean Motor Co.)*, 755 F.2d 1223, 1229 (6th Cir. 1985).

To satisfy the first factor in the bankruptcy context, MIG must show a likelihood of a successful reorganization. *In re Cable*, No. 1:21-bk-119797-SDR, 2022 WL 2707691, at *4 (Bankr. E.D. Tenn. July 12, 2022). Based on the financials presented (including MIG's significant outstanding accounts receivable); the Subchapter V Trustee's on-the-record representations and firm support of MIG's reorganization prospects; and MIG's ongoing joint venture with Roncelli, another established general contractor, the Court finds MIG satisfies this factor.

As to the second factor, "although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 327 (6th Cir. 2019) (emphasis in original). MIG will not suffer irreparable injury if Selective is permitted to pay bond claims. The universe of potential bankruptcy claims arising from the bond is fixed at 94: if Selective pays a claim, that subcontractor's proof of claim will simply be transferred to Selective without any administrative burden on MIG. Fed. R. Bankr. P. 3001(e)(2). If MIG determines Selective improperly paid any bond claim, the transferred proof of claim remains subject to MIG's objection. And to clarify matters, the Court will order

5

Selective to limit payment of any subcontractor bond claims to the amounts due as of December 19, 2023—the petition date. There will be no "moving target" as MIG suggests. In addition, to the extent MIG asserts a lack of manpower to assist Selective's defense of bond claims, the Court questions its ability to adequately evaluate creditor claims during its bankruptcy. Because MIG is admittedly short-staffed, Selective's bond claim vetting team may well provide a valuable service to MIG in evaluating its bankruptcy creditor claims.

During argument, MIG's counsel suggested Selective will somehow profit—at MIG's expense—from paying bond claims. The Court's research has found no support for this contention. Instead, it is far more likely that the opposite is true. Like any insurance company, a surety that arbitrarily pays claims surely has a bleak future. The Court finds Selective has a financial incentive to thoroughly vet all bond claims, and deny them if appropriate.

MIG further argues that management of claims litigation will be burdensome, but Selective will lead the litigation defense (the automatic stay applies to actions against MIG), and to the extent a MIG representative must personally appear to support Selective's defense of bond claims, the litigation will be in the Detroit-area where MIG is based. The second factor weighs in favor of denial of injunctive relief.[3]

The third factor also weighs in favor of denying injunctive relief. If non-debtor Selective is not permitted carry out its independent obligation to pay bond claims, the subcontractors—who have allegedly performed the requisite work under the contract with the expectation that the *surety* would pay them if MIG did not promptly do so—will have to wait at

---

[3] To date, there is one lawsuit with 11 claimants; Selective has paid one pre-petition claim for $337,318.90.

least another three years to receive its promised full payment *from Debtor*. *See Kora & Williams Corp. v. C.J. Coakley Co., Inc. (In re Kora & Williams Corp.)*, 97 B.R. 258, 261 (Bankr. D. Md. 1988) ("[P]ayment bond was given to insure prompt payment of the subcontractors. To delay adjudication of the defendants' lawsuits [through a bankruptcy court stay against non-debtor surety] and their recovery of judgments that they can enforce against the bond will work to their disadvantage[.]"). Dreamtroit, the project owner, may also be at risk of foreclosure because of the pending liens unpaid subcontractors have filed against the property.

Finally, the fourth factor weighs in favor of denying injunctive relief. Public policy favors allowing the prompt payment of construction claims and execution of the performance bond so that construction projects are timely and properly completed to code. MIG's request would frustrate this policy. Indeed, "[t]o grant an injunction . . . would be contrary to the public policy adopted by the Little Miller Act . . . 'to foster immediate payment to those supplying government projects in order to prevent financial embarrassment that might result to them from a protracted delay in payment.'" *Id*. The policy underlying the Little Miller Act, based upon the federal Miller Act, although not at play here, is persuasive. The harm to the Debtor in denying an injunction does not outweigh the harm to the subcontractors/creditors if an injunction were granted.

On balance, the equities favor allowing Selective's continued bond claim investigations and claims payment process during MIG's bankruptcy.

IV. **CONCLUSION**

MIG's motion for injunctive relief is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court Orders that:

1. The federal district court litigation Selective filed seeking reimbursement from the individual guarantors is stayed until March 18, 2024. If MIG needs more than 90 days to file a plan of reorganization, it may include a request to extend this stay in its motion to extend the deadline to file a plan.

2. Selective is not prohibited from paying bond claims during MIG's bankruptcy. However, any payment shall be limited to reimbursement for amounts due as of the petition date.

3. Given the Court's opinion, the matter is set for a status conference on ***February 12, 2024, at 2:00 p.m.*** with respect to the necessity of this adversary proceeding. All interested parties must call (202) 503-1666 and use conference ID 231 911 059#.

**IT IS ORDERED**.

**Signed on January 29, 2024**

/s/ Mark A. Randon

**Mark A. Randon**
**United States Bankruptcy Judge**